**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION**

ISMAEL PAUL MARTINEZ                                           **PLAINTIFF**

V.                         **CASE NO. 5:15-cv-171-JM-BD**

LARRY NORRIS, *et al.*                                **DEFENDANTS**

## <u>ORDER</u>

Plaintiff Ismael Paul Martinez, a former Arkansas Division of Correction (ADC) inmate, filed this case without the help of a lawyer under 42 U.S.C. § 1983. (Doc. No. 2) Mr. Martinez alleges that he suffered cruel and unusual punishment, mental anguish, and pain and suffering because Defendants failed to protect him from attack at the hands of another inmate on December 8, 2014. (Doc. No. 2)

## I.     Background

Defendants Baker, Perry, and Williams moved for summary judgment, arguing the undisputed facts do not support a constitutional violation and they are entitled to sovereign and qualified immunity.[1] (Doc. No. 49) Magistrate Judge Beth Deere previously recommended that the Defendants' first motion for summary judgment on the merits be denied because there were material facts in dispute. (Doc. No. 52) This Court adopted that Recommendation. (Doc. No. 58) The Court appointed counsel to represent Mr. Martinez in all future proceedings. (Doc. No. 60)

---

[1] Claims against Defendants Gibson, McPhadden, Kelly, Norris, and Manning were dismissed because Mr. Martinez failed to exhaust his administrative remedies against them. (Doc. No. 42, Doc. No. 46)

Defendants then filed a motion to reconsider the order adopting Judge Deere's Recommendation. (Doc. No. 61) This Court granted the motion to reconsider in part, dismissing the official capacity claims for money damages against the Defendants. (Doc. No. 66)

Defendants appealed the denial of summary judgment to the Eighth Circuit Court of Appeals. (Doc. No. 70, Doc. No. 71) The Eighth Circuit Court of Appeals affirmed the denial of summary judgment, finding that disputed material facts remained. (Doc. No. 77)

Defendants have now filed another motion for summary judgment, arguing there are no disputed facts, they are entitled to qualified immunity, and they are entitled to judgment as a matter of law. (Doc. No. 92) Mr. Martinez, through his attorney, has responded to the Defendants' motion arguing there are numerous disputed facts and Defendants are not entitled to summary judgment. (Doc. No. 98)

## II.     Standard

In a summary judgment, the court rules in favor of a party before trial. A moving party is entitled to summary judgment if the evidence shows that there is no genuine dispute as to any fact that is important to the outcome of the case. FED.R.CIV.P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S. Ct. 2548 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 246, 106 S. Ct. 2505 (1986). If there are genuinely disputed facts that are important enough to matter, the Court views those facts in a light most favorable to the non-moving party, provided the record does not contradict the non-moving party's version of the facts so as to render that version unacceptable to any

reasonable juror. *O'Neil v. City of Iowa City, Iowa*, 496 F.3d 915, 917 (8th Cir. 2007).

## III.    Facts

On December 8, 2014, inmate Tanner attacked Mr. Martinez and eight other inmates within the span of ten to fifteen minutes in three different areas of Eight Barracks of the Delta Unit. (Doc. No. 2).

On the night of the incident, Defendant Baker was working the control booth that monitored Six and Eight Barracks, and Defendant Williams was assigned to the control booth that monitored Five and Seven Barracks. (Doc. No. 92-8, p.3) At the time the attacks were occurring, Defendant Perry testified she was in the control booth that monitored Six and Eight Barracks completing incident reports, while Defendant Baker was in the same booth, updating the security logs.. (Doc. No. 92-8, p. 4)

The incident began after lights out when inmate Tanner and inmate Walker had a verbal confrontation. (Doc. No. 2) Inmate Tanner went upstairs and attacked inmate Smith, then inmate Kessing, then inmate Harp. *Id*. Inmate Tanner then went downstairs and attacked inmate Morrison, then inmate Chapman, and then began to attack Mr. Martinez, when Mr. Martinez got out of his bed to help inmate Chapman. *Id*. According to Mr. Martinez, inmate Tanner hit Mr. Martinez in the head and side of his body and then threw him on the floor and began kicking him in the back. *Id*. As Mr. Martinez got up from the floor, he asserts that he could see Defendants Perry, Williams, and Baker watching from the window. *Id*. Inmate Harrison also testified that he saw an ADC Defendant that appeared to be observing the assaults, explaining, "he was looking

3

towards us" and it would be difficult to believe that he could be looking from the control from booth from that angle and not see the attacks. (Doc. No. 92-4, p.6, 12)

According to Mr. Martinez, he yelled to the Defendants in the control booth, "Hey, look, you could see what he's doing, get him out of here." (Doc. No. 2, Doc. No. 92-1, p.24) According to Mr. Martinez, Defendants did not take any action at that time. (Doc. No. 2) Inmate Tanner then attacked inmate Smith and then inmate Walker. *Id*.

Mr. Martinez argues that the attacks were loud inside the barracks. (Doc. No. 99) According to Mr. Martinez, there was screaming, yelling, sounds of slaps, and the sound of beds being scraped on the floor. (Doc. No. 92-1, pp. 36, 44, 63; Doc. No. 99) Inmate Harrison testified that 15 inmates were encouraging the attacks and that he heard a thump and slap through his earbuds and an inmate calling for a correctional officer. (Doc. No. 92-4, p. 3, 5)

According to Defendant Perry she did not know about any attack before inmate Walker came to the control booth bleeding and informed her that he had been attacked. (Doc. No. 92-8) Defendant Baker testified that when inmate Walker came to the control booth and altered them that he had been attacked, while Defendant Perry was tending to inmate Walker, Defendant Baker went back to the control booth to get more paper towels and only then saw Mr. Martinez waving from the bottom tier and pointing up yelling, "Lights!" (Doc. No. 92-2, pp.15-16) Defendant Baker turned on the lights and saw inmate Tanner running and immediately called for backup so an officer could enter the barracks. (Doc. No. 92-2, pp.15-17) According to Defendant Williams, no staff at ADC

4

witnessed any of the attacks. (Doc. No. 92-12, p.2)

It is undisputed that Mr. Martinez and inmate Tanner had no prior conversations or confrontations before December 8, 2014, and Mr. Martinez never filed a grievance against inmate Tanner. (Doc. No. 50)

## IV.    Discussion

Qualified immunity protects government officials from suit under § 1983 if their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To prevail against a claim of qualified immunity, a plaintiff must show that the facts alleged or shown by the plaintiff make out a constitutional violation, and that the constitutional right allegedly violated was "clearly established." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

In order to establish an Eighth Amendment failure-to-protect claim, "a plaintiff must show that the prison official was deliberately indifferent to a 'substantial risk of serious harm.'" *Young v. Selk*, 508 F.3d 868, 872 (8th Cir. 2007). To prevail, the plaintiff must show that the deprivation of rights was sufficiently serious; that is, he must show that he was "incarcerated under conditions posing a substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The prisoner must also show that the prison official had a "sufficiently culpable state of mind." *Id.* Stated another way, the question is whether the official actually knew of a substantial risk but failed to respond reasonably. *Farmer*, 511 U.S. at 837, 844-45.

A prison official cannot "escape liability for deliberate indifference by showing that, while he was aware of an obvious, substantial risk to inmate safety, he did not know that the complainant was especially likely to be assaulted by the specific prisoner who eventually committed the assault." *Id*. at 843. "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence. . . ." *Id*. at 842.

Constructive knowledge, or the should-have-known standard, is not sufficient to support a finding of deliberate indifference. *Spruce v. Sargent*, 149 F.3d 783, 786 (8th Cir. 1998). But, "if an Eighth Amendment plaintiff presents evidence showing that a substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus 'must have known' about it, then such evidence could be sufficient to permit a trier of fact to find that the defendant-official had actual knowledge of the risk." *Farmer,* 511 U.S. at 842-3. Moreover, if a plaintiff "presents evidence of 'very obvious and blatant circumstances' indicating that the defendant knew the risk existed, the jury may properly infer that the official must have known." *Spruce*, 149 F.3d at 786.   It is the Court's finding that Plaintiff has failed to meet this burden.

V.      **Analysis**

Mr. Martinez asserts that inmate Tanner had beaten another inmate at the Wrightsville Unit before being transferred to the Delta Unit and that he had informed

officials at the Delta Unit that he would attack more inmates if he were not transferred from the Delta Unit. (Doc. No. 2) Furthermore, Mr. Martinez alleges that inmate Tanner was placed in isolation at the Wrightsville Unit as a deterrent to further attacks at that Unit. *Id.* Given these facts, Mr. Martinez alleges that Defendants should have known inmate Tanner posed a threat before the attacks began. Unfortunately for Mr. Martinez, his allegations are only inadmissible hearsay, and he has produced no evidence that these assertions are true, and if so, that Defendants had any knowledge of them. Fed. R. Civ. P. 56(e); *Aucutt v. Six Flags Over Mid-America, Inc.* 85 F.3d 1311, 1317 (8th Cir. 1996) (evidence submitted in opposition to a motion for summary judgment must be admissible and based on personal knowledge).

In his deposition, Mr. Martinez testified that inmate Tanner was known to have a bad attitude and was very aggressive. (Doc. No. 92-1) This description, however, could describe any number of inmates. Warden Gibson testified that he had no record of incidents involving inmate Tanner and aggressive behavior, and the December 2014 incident involving Tanner surprised Warden Gibson. (Doc. No. 92-7) Defendant Perry testified that no inmate had ever complained to her about inmate Tanner and she had never observed him being aggressive with any of the inmates in Eight Barracks. (Doc. No. 92-8) Defendant Baker testified that inmate Tanner seemed like a decent guy and was not a disciplinary problem. (Doc. No. 92-2, pp.7-8) Inmate Harrison, who was also assigned to Eight Barracks, testified that inmate Tanner seemed to be a "pretty decent kid," and he never saw inmate Tanner being confrontational with other inmates. (Doc.

7

No. 101)

Unfortunately for Mr. Martinez, there is not admissible evidence that would support a conclusion that Defendants should have known inmate Tanner posed a threat to Mr. Martinez before the attacks began. Instead, the evidence overwhelmingly supports the conclusion that inmate Tanner's attacks on December 8, 2014, were a surprise to officials and inmates.

This, however, does not end the inquiry. The question becomes, were the Defendants deliberately indifferent to Mr. Martinez's safety once the attacks began. Both Mr. Martinez and inmate Harrison concede that they cannot testify about what the officers actually observed on the evening of December 8, 2014. (Doc. No. 49-1, p.51; Doc. No. 92-4, pp.21-22; Doc. No. 101, p. 6). The only persons who can give competent, admissible testimony about what Defendants Perry, Williams, and Baker observed that evening are Defendants Perry, Williams, and Baker. It is not enough for Mr. Martinez or other inmates to merely allege that Defendants were watching the attacks; Mr. Martinez must meet proof that they had knowledge, that they perceived the attacks but failed to act. *Arkansas Right to Life State PAC v. Butler*, 983 F. Supp. 1209 (W.D. Ark. 1997) (citing Federal Rule Civil Procedure 55 advisory notes). Each Defendant refutes that they observed any of the attacks. While Mr. Martinez argues that the attacks were loud inside the barracks, Mr. Martinez has not been able to offer any evidence about what could be heard inside the control booth. Furthermore, by Mr. Martinez's own account, he did not alert the Defendants to the situation until after his attack took place, not before.

Furthermore, in his Complaint, he states that did not observe the Defendants watching until after he was getting up off the floor after he was attacked.

The Court cannot rely on hearsay, speculation, unsupported conclusion, or any inadmissible evidence to create a genuine issue of material fact. There is no admissible evidence demonstrating that the Defendants knew about the attacks and ignored them. At most, Defendants Baker and Perry were negligent in their duties to watch the inmates while they were in the control booth filling out incident reports and security logs. Negligence alone, however, is not enough to demonstrate that Defendants were deliberately indifferent to Mr. Martinez's safety. Under these facts, Defendants are entitled to qualified immunity and this lawsuit must be dismissed. See *Latimore v. Widseth*, 7 F.3d 713 (8th Cir. 1993) ("The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law.")

## VI.    Conclusion

Defendants' motion for summary judgment (Doc. No. 92) is GRANTED.

IT IS SO ORDERED, this 13th day of July, 2020.

_____
UNITED STATES DISTRICT JUDGE